UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH

**DOMINIQUE BROCK-BUTLER**                                                                **PLAINTIFF**

**v.**                                                        **CIVIL ACTION NO. 5:14-CV-P210-TBR**

**PHILLIP PARKER** *et al*.                                                               **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Plaintiff Dominique Brock-Butler, a prisoner proceeding *pro se*, *in forma pauperis*, filed an action under 42 U.S.C. § 1983 in which he asserts various federal and state-law claims (DN 1).  This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

For the reasons set forth below, the Court will allow the following claims to proceed beyond initial review under § 1915A:  (1) the Eighth Amendment excessive-force claim against all Defendants in their individual and official capacities; (2) the First Amendment free-exercise claim against Defendant Lamb in his individual capacity; (3) the state-law claim for assault and battery; (4) the state-law claim for gross neglect; (5) the state-law claim for negligent hiring and retention; (6) the state-law claim for intentional infliction of emotional distress; (7) the state-law claim for criminal abuse, Ky. Rev. Stat. Ann. § 508.100; (8) the state-law claim for first-degree assault, Ky. Rev. Stat. Ann. § 508.010; and (9) the state-law claim for second-degree assault, Ky. Rev. Stat. Ann. § 508.020.  The state-law claims will proceed against all Defendants in their individual capacities, with the exception of the claim for negligent hiring and retention which will proceed against Defendant Parker in his individual capacity only.  All of the other federal

and state-law claims will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

## I. STATEMENT OF THE CASE

Plaintiff brings this action against five Defendants: (1) Jailer Phillip Parker; (2) Chief Deputy Jimmy Lamb; (3) Sergeant Cherie Belt; (4) Deputy Michael Hammelton; and (5) Deputy Athena Abshire. Plaintiff identifies all Defendants as being employees of the Crittenden County Jail (CCJ). He sues each Defendant in his or her individual and official capacity. As relief, Plaintiff seeks monetary damages and payment of his hospital bill. He further "requests this honorable court to grant Plea of Nolo Contendere. As found under Federal Rule of Evidence 410."

According to the complaint, the events about which Plaintiff complains occurred on March 3, 2014, while he was incarcerated at the CCJ. Plaintiff is presently incarcerated at Kentucky State Penitentiary. As background, Plaintiff states that a few weeks prior to the March 3, 2014, events, his brother was shot and killed while playing basketball. According to Plaintiff, all of the Defendants were aware of the death of his brother and the distress Plaintiff was in over his brother's death. Plaintiff states that his brother's "death caused [him] to have suicidal thoughts, And Bipolar disorder, in witch [he] would spazz out on [his] Peers." Further, Plaintiff states that he has "Been Diagnosed with Depression By 7 Counties, and Perscribed to take Zoloft, And Ability."

On March 3, 2014, Plaintiff states that, without warning, and while he was standing in 3 to 6 inches of toilet water with his hands raised and facing the brick wall of an isolation cell, Defendant Hammelton sprayed him with OC spray.[1] According to Plaintiff, Defendant Hammelton sprayed him with the OC spray because of a personal vendetta he had against

---

[1] Apparently, OC is a type of pepper spray.

2

Plaintiff. Plaintiff states that thereafter, "without even evaluating the situation," Defendant Parker "shot [him] with a Taizer-gun" in the back. Plaintiff contends that Defendant Parker lacked probable cause to taze him. Plaintiff states that "[t]he High Voltage of Electric Shock caus[ed] him to fall backward And bust [his] head on concrete floor." According to Plaintiff, he fell in the toilet water that was on the floor and was rendered unconscious. Plaintiff states that he sustained a 3 to 4 inch gash to the back of his head. Thereafter, Plaintiff states that he was handcuffed, shackled, and then forced to his feet by Defendants Parker, Hammelton, and Abshire. He represents that once on his feet, he fainted and was caught by Defendants Hammelton and Parker.

According to Plaintiff, he was "practicly drug to the shower" while two Taser prongs were still stuck in his lower back. Plaintiff states that he was forced into a cold shower while fully clothed. He states that he was told if he did not get in the shower he would be tazed again, and he represents that at the time he got in the shower he was "still facing the risk of going into A seizure, or going into shock and dyeing, due to A Posible concussion." Plaintiff states that the cold water shocked his body when it came in contact with his skin. After Plaintiff got out of the shower, Defendant Parker gave Defendant Belt "the order to pull the prongs out of [his] back." According to Plaintiff, Defendant Belt "ripped [the prongs] out of [his] back, causing excruciating Pain." Plaintiff states that Defendant Belt had written him up on several occasions prior to these events. Further, Plaintiff states that Defendant Belt was not "certified in the medical field."

After the prongs were removed, Plaintiff states that Defendant Abshire "practicly snatched [him] to the side." It is at that time that Defendant Belt noticed the gash in the back of Plaintiff's head and notified Defendant Parker who concluded that Plaintiff needed "EMS

treatment." According to Plaintiff, he "was forced to walk down [the] hallway, Leaving A blood trail behind [him] as we proceed[ed] toward the front of the Jail." Plaintiff states that he fainted again while walking down the hallway and was caught by Defendants Parker, Belt, and Abshire, who were dragging him to the front. According to Plaintiff, this "violates Inst. medical Emegency Procedure." He states that he was practically dragged the rest of the way to the "Property room." After arriving in the "Property room," Plaintiff states that "[t]hey then stripped [him] out of [his] wet clothes, And offered [him] dry oranges [presumably a jumpsuit]."

Plaintiff states that due to a major snowstorm on the date these events transpired, the CCJ was forced to use "uncertified officers to apprehend him," and this contributed to excessive force being used against him. Plaintiff states that Defendants Hammelton and Abshire were these "uncertified officers."

According to Plaintiff, he was "bleeding uncontrollably, until Paramedics Arived." Plaintiff states that he was "so out of it" when the paramedics arrived that he "could not Answer any of the questions asked by EMS." According to Plaintiff, "[t]he Paramedics considered [him] nonresponsive . . . [which] was caused by Short term memory loss."

Apparently Plaintiff was transported to a hospital. He states that while at the hospital, he had an MRI and a chest x-ray; he assumes these were added to his hospital bill. According to Plaintiff, he was taken to an operating room where the doctor informed him that he would need to have his head shaved in order to "get to the wound." Plaintiff represents that he is a "documented Rastaferi." As such, he is "required not to let A razor touch [his] bare skin. As it is An Abomination." Plaintiff states that he "[p]rotested several times, but was threatened by Defendant Lamb that [he would] be taized Again, so [he] had to sit there in handcuffs And shackles And Allow this Doctor to Shave [his] head." The doctor placed seven staples "to the

4

back of [Plaintiff's] head." Plaintiff states that he "can't even begin to explain how humiliating it was to let this Dr. shave [his] head." Plaintiff states that it was a religious humiliation to have his head shaved. This "operation," Plaintiff represents, was an hour long, painful, and brought tears to his eyes.

According to Plaintiff, when he returned to the jail he was "given no Lunch And [was] thrown right back into the Same isolation cell [where] the incident took place." He states that he was "forced to Starve untill Dinner time that night [and] was mistreated by officers for the remainder of the day." Plaintiff states that he was not given any antibiotics or pain medication to treat his injury, so he was "forced to suffer untill Doc came And Picked [him] up from the Class-D facility." Plaintiff contends that "this falls back on the nurses of the facility, who were also unqualified, who allowed [him] to suffer, after [his] visit to the Emergency Room."

Plaintiff states that the staples remained in his head for 14 days. At the time the staples were removed, Plaintiff represents that he was incarcerated in the Green River Correctional Complex (GRCC). The process of removing the staples, according to Plaintiff, was "[e]xtremely Painful" and "brought tears to [his] Eyes." According to Plaintiff, it took 2-3 weeks for Plaintiff's hair to start growing again.

Plaintiff states that while he was at GRCC, this incident was investigated, and he was not "[c]harged with Any of the Allegations that caused the Deputies to Taize [him] in the 1st place." According to Plaintiff, he was "sprayed w/OC, Taized, And rudely mishandled for no reason." Plaintiff contends that "[t]his is unfair and the Deputies responsible must be held Accountable."

Plaintiff contends that his First, Second, Fourth, Eighth, and Fourteenth Amendment rights have been violated. He also sets forth fifteen separate "counts." He sets out the counts as follows: (1) excessive force; (2) assault and battery; (3) "Monell Violations"; (4) gross neglect;

(5) negligent hiring and retention; (6) intentional infliction of emotional distress; (7) misconduct; (8) humiliation; (9) pain and suffering; (10) religious humiliation; (11) malicious prosecution; (12) state-law claim for criminal abuse, Ky. Rev. Stat. Ann. § 508.100; (13) state-law claim for domestic assault, Ky. Rev. Stat. Ann. § 508.032; (14) state-law claim for second-degree assault, Ky. Rev. Stat. Ann. § 508.020; and (15) state-law claim for first-degree assault, Ky. Rev. Stat. Ann. § 508.010.

## II. **STANDARD OF REVIEW**

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any portion of it, if it determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A; *McGore v. Wrigglesworth*, 114 F.3d at 604. A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 90 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal

6

conclusions.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)).  The court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff.  *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975).  To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party."  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III. LEGAL ANALYSIS

*A. Federal Claims*

*1. Official-Capacity Claims*

Plaintiff sues each Defendant in his or her official capacity.  "Official-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'"  *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 690 n.55 (1978)).  Suing Defendants in their official capacities is the equivalent of suing their employer Crittenden County.  *See Lambert v. Hartman*, 517 F.3d 433, 439-40 (6th Cir. 2008) (stating that civil rights suit against county clerk of courts in his official capacity was equivalent of suing clerk's employer, the county); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (advising that since the county police department is not an entity which may be sued, the county is the proper party); *Bradford v. Hammond*, No. 3:05CVP459-H, 2005 WL 2739154, at *2 (W.D. Ky. Oct. 21, 2005) (construing a claim against Louisville Metro Corrections as one brought against Louisville/Jefferson County Metro

Government); *Smallwood v. Jefferson Cnty. Gov't*, 743 F. Supp. 502, 503 (W.D. Ky. 1990) (concluding that a suit against the Jefferson County Government, the Jefferson County Fiscal Court, and the Jefferson County Judge Executive is actually a suit against Jefferson County itself).

When a § 1983 claim is made against a municipality, this Court must analyze two distinct issues: (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). The Court will first address the second issue, *i.e.*, whether the municipality is responsible for the alleged constitutional violation.

"[A] municipality cannot be held liable *solely* because it employs a tortfeasor -- or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. at 691; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986).

A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. at 694; *Deaton v. Montgomery Cnty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). Simply stated, "a plaintiff must 'identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy.'" *Garner v. Memphis Police Dep't*, 8 F.3d 358,

8

364 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds by Frantz v. Vill. of Bradford*, 245 F.3d 869 (6th Cir. 2001)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy v. City of Dayton*, 38 F.3d at 286 (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted))

Plaintiff contends that CCJ has a policy that allows the use of Tasers by prison guards. Plaintiff contends that the use of Tasers is never justified in this institutional setting and that, but for the policy allowing the use of Tasers, he would not have been subjected to the wrongful treatment and sustained the injury about which he complains.

Upon consideration, the Court will allow the Eighth Amendment excessive-force claim against Defendants in their official-capacities to proceed. Having failed to allege any municipal policy regarding the other claims made in his complaint, all other official-capacity claims will be dismissed from this action pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### 2. Individual-Capacity Claims

#### a. Eighth Amendment Excessive Force

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Id.* at 9. Of course, not "every malevolent touch by a prison guard gives rise to a federal cause of action," *id.* at 9, and "*de minimis* uses of physical force" do not support a

constitutional claim "provided that the use of force is not a sort 'repugnant to the conscience of mankind.'" *Id.* at 10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). Furthermore, "[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979).

In evaluating an excessive-force claim, the court should consider the extent of injury suffered by an inmate in determining whether the use of force was wanton and unnecessary, although "[t]he absence of serious injury . . . does not end [the inquiry]." *Hudson v. McMillian*, 503 U.S. at 7. Other relevant factors in evaluating an excessive-force claim include "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Id.* (quoting *Whitley v. Albers*, 475 U.S. at 321).

Upon review of Plaintiff's allegations, the Court will allow the Eighth Amendment excessive-force claim against Defendants to proceed.

### b. *Malicious Prosecution*

"The Sixth Circuit 'recognize[s] a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment,' which 'encompasses wrongful investigation, prosecution, conviction, and incarceration.'" *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010) (quoting *Barnes v. Wright*, 449 F.3d 709, 715-16 (6th Cir. 2006)). A malicious-prosecution claim seeks to remedy "detention accompanied not by absence of legal process, but by *wrongful institution* of legal process." *Wallace v. Kato*, 549 U.S. 384, 390 (2007).

In the present case, Plaintiff fails to allege any investigation, prosecution, conviction, or incarceration which was instituted or imposed against him. He does make reference to an

investigation into the matter that precipitated the tazing and states that he was not charged, but he does not allege that any Defendant instituted any investigation or proceedings against him.

Therefore, having failed to allege conduct necessary to support a malicious prosecution claim, this claim will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### c. First Amendment

The First Amendment to the United States Constitution provides as follows:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. Const. amend. I. Inmates retain their First Amendment right to exercise their religious beliefs. *Cruz v. Beto*, 405 U.S. 319, 322 (1972) (per curiam); *see also O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) ("Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion.") (citations omitted). However, the right is subject to restrictions and limitations. *Bell v. Wolfish*, 441 U.S. at 549-51. These rights may be impinged by prison officials if the regulation is "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). The burden rests on prison officials to set forth legitimate reasons for interfering with a prisoner's First Amendment rights. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *Brooks v. Seiter*, 779 F.2d 1177, 1180-81 (6th Cir. 1985). However, the Court must give great deference to the prison officials when the constitutionality of prison regulations are challenged. *Turner v. Safley*, 482 U.S. at 89-90; *Bell v. Wolfish*, 441 U.S. at 547.

Plaintiff claims that Defendants violated his right to free exercise of his religion because he was forced to shave his head to treat the gash to his head resulting from the Taser incident.

He further claims that even though he protested having his head shaved, that Defendant Lamb threatened him with being tazed again if he failed to comply with the doctor's instructions.

Upon consideration, the Court will allow the First Amendment free-exercise claim to proceed against Defendant Lamb. The First Amendment free-exercise claim will be dismissed as to Defendants Parker, Belt, Hammelton, and Abshire pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted since there is nothing in the complaint that alleges they were involved in the shaving of Plaintiff's head.

### d. Second Amendment

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The Supreme Court has held that the Second Amendment protects an individual's right to keep and bear arms without regard to whether they are used for the purpose of militia service. *District of Columbia v. Heller*, 554 U.S. 570, 595, 598-99 (2008). Further, the Court has held that the Second Amendment codified the pre-existing right to keep and bear arms. *See id.* at 592 (explaining "it has always been widely understood that the Second Amendment, like the First and Fourth Amendments, codified a *pre-existing* right"). "The core right recognized in *Heller* is 'the right of law-abiding, responsible citizens to use arms in defense of hearth and home.'" *United States v. Greeno*, 679 F.3d 510, 517 (6th Cir. 2012) (citation omitted).

Plaintiff claims that the Second Amendment was violated because Defendants abused their power during the incident about which he complains. This is not conduct that falls within the Second Amendment right to keep and bear arms.

Accordingly, Plaintiff's Second Amendment claim will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### e. Fourth and Fourteenth Amendments

Neither the Fourth nor Fourteenth Amendments apply to the events about which Plaintiff complains. The Fourth Amendment prohibits unreasonable searches and seizures. Plaintiff was incarcerated at the time the events about which he complains occurred. Attempting to subdue him in his prison cell does not constitute a seizure for purposes of the Fourth Amendment. *See Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001) (recognizing that the Supreme Court "confirmed a Fourth Amendment right to be free from unreasonable searches and seizures is inconsistent with incarceration"); *Goldhaber v. Higgins*, 576 F. Supp. 2d 694, 718 (W.D. Pa. 2007) (finding that the plaintiff was not "seized" for purposes of the Fourth Amendment since he was incarcerated at the time the alleged wrongful events took place). Further, the Supreme Court has found that "the Fourth Amendment has no applicability to a prison cell." *Hudson v. Palmer*, 468 U.S. 517, 536 (1984).

The Fourteenth Amendment prohibits any State from depriving "any person life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The point is straightforward: the Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). In addressing whether the Fourteenth Amendment would apply to a situation involving the alleged use of excessive force on a prisoner, the Supreme Court stated, "We think the Eighth Amendment, which is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions, serves as the primary source of substantive protection to convicted prisoners in cases such as this one, where

the deliberate use of force is challenged as excessive and unjustified." *Whitley v. Albers*, 475 U.S. at 327. "It would indeed be surprising if, in the context of forceful prison security measures, 'conduct that shocks the conscience' or 'afford[s] brutality the cloak of law,' and so violates the Fourteenth Amendment, were not also punishment 'inconsistent with contemporary standards of decency' and 'repugnant to the conscience of mankind,' in violation of the Eighth [Amendment]." *Id.* (citations omitted).

Plaintiff's Fourth and Fourteenth Amendment claims are derived solely from his allegation about being tazed and sprayed with OC spray and the injuries sustained therefrom. His claim is bounded by the Eighth Amendment, the "explicit textual source of constitutional protection" in the prison context. *Graham v. Connor*, 490 U.S. 386, 395 (1989). "It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). "[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997).

For these reasons, the Fourth and Fourteenth Amendment claims will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

B. *State-Law Claims*

   1. *Misconduct, Humiliation, Pain and Suffering, and Religious Humiliation*

The Court knows of no general cause of action for misconduct, humiliation, pain and suffering or religious humiliation under Kentucky law. Humiliation and pain and suffering are types of damages which Plaintiff may or may not be entitled to if he succeeds on one of his proceeding claims; however, these are not separate causes of action.

Accordingly, the claims for misconduct, humiliation, pain and suffering, and religious humiliation will be dismissed from this action pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

   2. *Malicious Prosecution*

In Kentucky, there are six basic elements necessary to the maintenance of a claim for malicious prosecution. They are:

> (1) the institution or continuation of original judicial proceedings, either civil or criminal, or of administrative or disciplinary proceedings, (2) by, or at the instance, of the plaintiff, (3) the termination of such proceedings in defendant's favor, (4) malice in the institution of such proceeding, (5) want or lack of probable cause for the proceeding, and (6) the suffering of damage as a result of the proceeding.

*Raine v. Drasin*, 621 S.W.2d 895, 899 (Ky. 1981). Kentucky "law generally disfavors the tort of malicious prosecution"; therefore, "claimants alleging malicious prosecution must strictly comply with each element of the tort." *Garcia v. Whitaker*, 400 S.W.3d 270, 274 (Ky. 2013). As discussed above, in the present case Plaintiff fails to allege the institution of any judicial, administrative, or disciplinary proceeding. He does make reference to an investigation into the matter that precipitated the tazing and states that he was not charged. However, he does not allege that any Defendant instituted proceedings against him.

Therefore, having failed to allege the necessary elements of a malicious prosecution claim, this claim will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### 3. *Domestic Assault*

Plaintiff brings a claim for domestic assault pursuant to Ky. Rev. Stat. Ann. § 508.032. This particular statue criminalizes certain assaults against a "family member or member of an unmarried couple." Ky. Rev. Stat. Ann. § 508.032(1). "Family member" and "member of an unmarried couple" are defined in Ky. Rev. Stat. Ann. § 403.720. A "family member" is defined as "a spouse, including a former spouse, a grandparent, a parent, a child, a stepchild, or any other person living in the same household as a child if the child is the alleged victim." Ky. Rev. Stat. Ann. § 403.720(2). "Member of an unmarried couple" is defined as "each member of an unmarried couple which allegedly has a child in common, any children of that couple, or a member of an unmarried couple who are living together or have formerly lived together." Ky. Rev. Stat. Ann. § 403.720(4). As Plaintiff's allegations do not involve a "family member" or "member of an unmarried couple," this claim fails.

Accordingly, Plaintiff's domestic assault claim will be dismissed from this action pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### 4. *Remaining Seven State-Law Claims*

Plaintiff alleges seven additional state-law claims. They are as follows: (1) assault and battery; (2) gross neglect; (3) negligent hiring and retention; (4) intentional infliction of emotional distress; (5) criminal abuse, Ky. Rev. Stat. Ann. § 508.100; (6) first-degree assault, Ky. Rev. Stat. Ann. § 508.010; and (7) second-degree assault, Ky. Rev. Stat. Ann. § 508.020.

16

Upon consideration, the Court will exercise supplemental jurisdiction over these state-law claims and allow them to proceed past initial review.

### IV.  ORDER

For the reasons set forth more fully above, and the Court being otherwise sufficiently advised,

**IT IS ORDERED that the following claims shall proceed beyond initial review under § 1915A:  (1) the Eighth Amendment excessive-force claim against all Defendants in their individual and official capacities; (2) the First Amendment free-exercise claim against Defendant Lamb in his individual capacity; (3) the state-law claim for assault and battery; (4) the state-law claim for gross neglect; (5) the state-law claim for negligent hiring and retention; (6) the state-law claim for intentional infliction of emotional distress; (7) the state-law claim for criminal abuse, Ky. Rev. Stat. Ann. § 508.100; (8) the state-law claim for first-degree assault, Ky. Rev. Stat. Ann. § 508.010; and (9) the state-law claim for second-degree assault, Ky. Rev. Stat. Ann. § 508.020.  The state-law claims will proceed against all Defendants in their individual capacities, with the exception of the claim for negligent hiring and retention which will proceed against Defendant Parker in his individual capacity only.**

**IT IS ORDERED** that **all other federal and state-law claims** are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

The Court will enter a separate Scheduling Order directing service and governing the development of the continuing claims. In permitting these claims to continue, the Court passes no judgment on the merits and ultimate outcome of the action.

Date:

cc: Plaintiff, *pro se*
    Defendants
    Crittenden County Attorney
4413.003