UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:14-CV-000210-TBR

DOMINIQUE BROCK-BUTLER,                                                                  Plaintiff,

v.

PHILLIP PARKER, *et al.*,                                                                Defendants.

### MEMORANDUM OPINION

Dominique Brock-Butler, a state inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action against various Crittenden County Detention Center personnel. Upon conducting its initial review, the Court dismissed some of his claims. Now, the correctional officers seek summary judgment as to the remaining handful, submitting that Brock-Butler failed to exhaust available administrative remedies before filing this lawsuit. Because there is no genuine dispute of material fact on that point, the correctional officers' Motion for Summary Judgment, R. 65, is **GRANTED**.

### I.

### A.

Though he currently resides at the Kentucky State Penitentiary, Dominique Brock-Butler was incarcerated at the Crittenden County Detention Center during the time period relevant to this action. *See* R. 71 at 4 (Brock-Butler's Deposition). On the morning of March 3, 2014, Deputy Athena Abshire refused to give Brock-Butler a breakfast tray until he returned his tray from the night before. *Id.* at 88. Brock-Butler attempted to return the tray to Deputy Abshire, but she refused to take it. *Id.* Brock-Butler asked to speak with Deputy Abshire's supervisor, Sergeant Cherie Belt. *Id.* He then asked Sergeant Belt for a breakfast tray. *Id.* Sergeant Belt told Brock-Butler that,

1

upon Jailer Phillip Parker's instruction, she could not give him a breakfast tray until Jailer Parker arrived. *Id.*

Subsequently, Brock-Butler began kicking, *see id.* at 88–89, and slamming the door to his cell with the tray from his prior meal, *see id.* at 93–94. The commode in Brock-Butler's cell started to overflow too, causing three to six inches of water to accumulate in and around Brock-Butler's cell. *See id.* at 89–95. Various correctional officers responded, and either Deputy Michael Hamilton or Jailer Parker ordered Brock-Butler to turn around, face the wall, and raise his hands. *Compare id.* at 94–95, *with id.* at 100.

According to Brock-Butler, he complied with that instruction. *Id.* at 94–95. Without warning, though, Deputy Hamilton sprayed Brock-Butler's back with pepper spray. *Id.* at 100–01. Immediately thereafter, officers opened the cell door, *id.* at 95, and Jailer Parker fired a TASER at Brock-Butler's lower back, *id.* at 95–96. Brock-Butler fell backwards, hitting his head against the concrete floor. *Id.* at 97.

According to Brock-Butler, the officers proceeded to "practically dr[a]g" him to a nearby shower and forced him to take a cold shower while clothed. *Id.* After Brock-Butler had showered off, Sergeant Belt, at Jailer Parker's behest, "yank[ed] out" the TASER prongs from Brock-Butler's back. *Id.* at 110–11. Sergeant Belt then noticed a gash on the back of Brock-Butler's head and told Jailer Parker. R. 1 at 6 (Complaint). Jailer Parker called for an ambulance. *Id.*

Accompanied by Chief Deputy Jimmy Lamb, Brock-Butler was taken to Crittenden County Hospital. *See* R. 65-17 at 1 (Hospital Records). A physician diagnosed him with a scalp laceration and contusion. *Id.* at 6. In order to close the small

2

laceration, the physician told Brock-Butler that he needed to shave that area of his head. R. 1 at 7. Brock-Butler objected since shaving a portion of his head would violate the tenents of his Rastafarian faith. R. 71 at 121. However, Chief Deputy Lamb threatened to "tase" him if he refused. *Id.* Accordingly, Brock-Butler complied. The physician used seven staples to close the laceration on Brock-Butler's scalp, R. 65-17 at 7, and discharged him a few hours later, *see id.* at 1, 17.

**B.**

On November 11, 2014, Dominique Brock-Butler filed this action against Jailer Phillip Parker, Chief Deputy Jimmy Lamb, Sergeant Cherie Belt, Deputy Michael Hamilton, and Deputy Athena Abshire, alleging various state and federal claims relating to the incident described above. *See* R. 1 at 10–24. On initial review of his complaint, *see* 28 U.S.C. § 1915A, the Court dismissed a few of Brock-Butler's original claims for failing to state a claim upon which relief could be granted, *see Brock-Butler v. Parker*, No. 5:14-CV-000210-TBR, 2015 WL 1249693, at *5–11 (W.D. Ky. Mar. 18, 2015). Along with various state-law claims, an excessive-force claim under the Eighth Amendment and a free-exercise claim under the First Amendment remain. *Id.* at *1. The correctional officers move for summary judgment. *See* R. 65 at 1 (Motion for Summary Judgment).

**II.**

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists where "there is sufficient evidence

3

favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "may not make credibility determinations nor weigh the evidence when determining whether an issue of fact remains for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001); *Ahlers v. Schebil*, 188 F.3d 365, 369 (6th Cir. 1999)). "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Back v. Nestlé USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson*, 477 U.S. at 251–52).

As the party moving for summary judgment, the correctional officers must shoulder the burden of showing the absence of a genuine dispute of material fact as to at least one essential element of Brock-Butler's claims. Fed. R. Civ. P. 56(c); *see also Laster*, 746 F.3d at 726 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Assuming the correctional officers satisfy their burden of production, Brock-Butler "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster*, 746 F.3d at 726 (citing *Celotex Corp.*, 477 U.S. at 324).

### III.

The correctional officers submit that summary judgment is appropriate because Brock-Butler has not exhausted all available administrative remedies with respect to his remaining federal claims. *See* R. 65-1 at 8–10 (Memorandum in Support); R. 72 at 6–7 (Reply). While Brock-Butler more or less acknowledges that fact, he insists exhaustion is not required because his complaint involves non-grievable issues. *See* R. 70 at 4

(Response); R. 75 at 2 (Surreply). On that point, however, Brock-Butler is mistaken. Consequently, the Court dismisses his federal claims without prejudice and declines, in its discretion, to exercise supplemental jurisdiction over his remaining state law claims.[1]

### A.

The Prison Litigation Reform Act of 1995 requires a prisoner to exhaust all available administrative remedies before filing any action "with respect to prison conditions" under 42 U.S.C. § 1983 or any other federal law. 42 U.S.C. § 1997e(a). That exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *accord Freeman v. Francis*, 196 F.3d 641, 644 (6th Cir. 1999). Exhaustion is mandatory and the remedies provided "need not meet federal standards, nor must they be 'plain, speedy, or effective.'" *Porter*, 534 U.S. at 524 (quoting *Booth v. Churner*, 532 U.S. 731, 739 (2001)). "Proper exhaustion demands compliance with [the prison's] deadlines and other critical procedural rules," *Woodford v. Ngo*, 548 U.S. 81, 90 (2006), and so "it is the prison's requirements, and not the PLRA, that define the boundaries of proper

---

[1] Before going further, the Court addresses a peripheral issue in the margin. Dominique Brock-Butler argues that a handful of exhibits attached to the correctional officers' motion are "so 'fuzzy and distorted'" as to warrant exclusion under Ky. R. Evid. 1003. R. 76 at 1 (Motion to Strike). Because the Federal Rules of Evidence generally govern evidentiary issues before this Court, *see V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012), the Court construes Brock-Butler's citation to Ky. R. Evid. 1003 as a reference to Fed. R. Evid. 1003 instead. Rule 1003 provides: "A duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." Fed. R. Evid. 1003.
    The Court disagrees with Brock-Butler's assessment of the exhibits' legibility. Simply put, there is nothing about these circumstances that make it unfair to consider the duplicates attached to the correctional officers' motion. Accordingly, the Court rejects Brock-Butler's effort to strike the identified exhibits. *See United States v. Ross*, 703 F.3d 856, 885 (6th Cir. 2012) ("[Brock-Butler] does not cite, nor have we been able to find, a single case in which this Court excluded a copy of a document under Rule 1003. We do not believe this should be the first.").

exhaustion," *Jones v. Bock*, 549 U.S. 199, 218 (2007); *accord Lee v. Wiley*, 789 F.3d 673, 677 (6th Cir. 2015).

Here, the Crittenden County Detention Center Grievance Procedures (CCDCGP) do just that. *See Penwell v. Markham*, No. 5:08-CV-00072-TBR, 2009 WL 3614312, at *2 (W.D. Ky. Oct. 28, 2009); *see also* 501 Ky. Admin. Regs. 3:140, § 6. Those procedures allow an inmate to file a grievance relating to *any* "condition of his confinement." CCDCGP § 13-6.

Of course, an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues. *See Ross v. Blake*, — U.S. —, —, 2016 WL 3128839, at *7–8 (2016); *Owens v. Keeling*, 461 F.3d 763, 769 (6th Cir. 2006); *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004). In this case, however, each complained-of issue *was* grievable under CCDCGP § 13-6. CCDCGP § 13-6(b) required Brock-Butler, then, to file a written grievance no more than five days from "the incident about which he is complaining." Despite knowing about the CCDCGP, *see* R. 71 at 11–12, understanding it, *see id.* at 28, and utilizing it on more than one occasion, *see* R. 65-12 at 1–10 (Grievance Records), Brock-Butler never filed a written grievance related to the subject-matter of this action, *see* R. 71 at 107–09. Accordingly, he has not exhausted all available administrative remedies as 42 U.S.C. § 1997e(a) requires.

Brock-Butler objects that the Kentucky Department of Corrections Policies and Procedures (CPP), and not the CCDCGP, define the boundaries of proper exhaustion in his case. *See* R. 70 at 4; R. 75 at 2. On that point, the Court is not so sure. The incident involved in this action happened while Brock-Butler was incarcerated at the Crittenden

County Detention Center. It makes sense, then, for the CCDCGP to function as the appropriate guideposts on the issue of exhaustion.

In any event, though, applying the CPP makes no difference. Under the CPP, "an inmate may file a grievance relating to 'any aspect of an inmate's life in prison that is not specifically identified as a non-grievable issue,' such as corrections or institutional policies and procedures, personal actions by staff, or staff conflicts." *Brock v. Martin*, No. 5:15-CV-00083-TBR, 2016 WL 676466, at *2 (W.D. Ky. Feb. 18, 2016) (citing CPP § 14.6(II)(B)(2)–(5)), *appeal docketed*, No. 16-5236 (6th Cir. Mar. 3, 2016); *see also* 501 Ky. Admin. Regs. 6:020, § 1. In contrast, non-grievable issues include, *inter alia*, disciplinary procedures, adjustment committee decisions, unit hearing officer decisions, adjustment officer decisions, or the warden's review of those decisions. CPP § 14.6(II)(C)(4).

Though Brock-Butler argues that he need not exhaust his administrative remedies because his complaint involves non-grievable "disciplinary procedures" under CPP § 14.6(II)(C)(4), *see* R. 70 at 4; R. 75 at 2, the Court disagrees. "Disciplinary proceedings are non-grievable because they 'have their own appellate process that inmates must follow.'" *Browder v. Parker*, No. 5:11-CV-29-GNS, 2015 WL 4555167, at *2 (W.D. Ky. July 28, 2015) (quoting *Brewer v. Corr. Corp. of Am.*, No. 7:09-CV-89-KKC, 2010 WL 398979, at *2 (E.D. Ky. Jan. 27, 2010)); *see also Brock*, 2016 WL 676466, at *2. Accordingly, an issue is non-grievable under CPP § 14.6(II)(C)(4) only where it is the result of a formal disciplinary action.

None of Brock-Butler's federal claims fall within that category. For example, Brock-Butler says that the officers used excessive force. Yet, Brock-Butler points to

7

nothing in the record to show that those acts happened as a result of a formal disciplinary action against him. The same holds true for Brock-Butler's free-exercise claim too. While Brock-Butler alleges that he suffered a variety of unpleasant acts, none were formal disciplinary actions. *Cf. Brock*, 2016 WL 676466, at *3 ("While Brock alleges that he suffered a variety of retaliatory acts for filing this and other lawsuits, none were formal disciplinary actions."); *Browder*, 2015 WL 4555167, at *2 ("[W]hile Browder claims he was placed in the cell for 'retaliatory and falsified disciplinary action,' it was not a formal disciplinary action.").

There is no genuine dispute of material fact, then, that Brock-Butler has not exhausted all of his available administrative remedies as 42 U.S.C. § 1997e(a) requires. Therefore, the Court will dismiss Brock-Butler's remaining federal claims without prejudice. *See Bell v. Konteh*, 450 F.3d 651, 653 n.4 (6th Cir. 2006) ("It is well established . . . that the appropriate disposition of an unexhausted claim under the PLRA is dismissal without prejudice." (citing *Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 994 (6th Cir. 2004); *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 510 (6th Cir. 2001); *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998))).

B.

Having dismissed Brock-Butler's federal claims, the Court declines to exercise supplemental jurisdiction over his various state law claims.[2] *See* 28 U.S.C. § 1367(c)(3); *Wee Care Child Ctr., Inc. v. Lumpkin*, 680 F.3d 841, 849 (6th Cir. 2012); *see also* 13D Charles Alan Wright et al., *Federal Practice and Procedure* § 3567.3 (3d ed.), Westlaw

---

[2] Brock-Butler's state law claims include assault and battery, gross negligence, negligent hiring and retention, intentional infliction of emotional distress, criminal abuse, first-degree assault, and second-degree assault. *See Brock-Butler v. Parker*, No. 5:14-CV-000210-TBR, 2015 WL 1249693, at *1 (W.D. Ky. Mar. 18, 2015).

(database updated April 2016) ("As a general matter, a court will decline supplemental jurisdiction if the underlying claims are dismissed before trial."). "When, as here, 'all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims.'" *Booker v. City of Beachwood*, 451 F. App'x 521, 523 (6th Cir. 2011) (quoting *Musson Theatrical, Inc. v. Fed. Express Corp.,* 89 F.3d 1244, 1254–55 (6th Cir. 1996), *amended on denial of reh'g*, No. 95-5120, 1998 WL 117980 (6th Cir. Jan. 15, 1998)). Accordingly, the Court will dismiss Brock-Butler's state law claims without prejudice too.

## IV.

Dominique Brock-Butler's Motion to Strike, R. 76, is **DENIED**, and Jailer Phillip Parker, Chief Deputy Jimmy Lamb, Sergeant Cherie Belt, Deputy Michael Hamilton, and Deputy Athena Abshire's Motion for Summary Judgment, R. 65, is **GRANTED**. An appropriate order and judgment will issue separate from this Memorandum Opinion.

Date:

cc:     Plaintiff, *pro se*
        Counsel of Record